IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

MICHAEL JAY GRATON,         :
                            :
        Plaintiff,           :
                            :
    VS.                      :   Civil Action File No.
                            :   7 : 09-CV-99 (HL)
BRIAN OWENS, Commissioner, et al.,  :
                            :
        Defendants.          :

## RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C.§1983 action are a pre-answer motion to dismiss filed by defendants Owens, Lewis, Camon, and Moody (Doc. 15) and an amended pre-answer motion to dismiss wherein defendant Welsh is added as a movant[1] (Doc. 22).

In his complaint, plaintiff, at the time confined to the Robert L. Patton Probation Detention Center ("RPPDC"), alleges that defendants, who were at the relevant time officials at the Detention Center, were negligent, deliberately indifferent and committed medical malpractice based on the treatment of a skin condition plaintiff contracted in February 2009. (See generally Doc. 2).

Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) for failure to exhaust administrative remedies.[2]

A complaint is subject to dismissal under Fed.R.Civ.P. 12(b) if an inmate has failed to exhaust

---

[1] Defendant Welsh was not included in the first motion as she had not been substituted as a defendant at the time of the filing of the first motion to dismiss at Doc. 15. She has since been substituted and has joined the original motion to dismiss (Doc. 22).

[2] Although defendants raise other grounds for dismissal, the undersigned is addressing herein only the grounds of failure to exhaust administrative remedies. In the event that the district judge to whom this case is assigned declines to accept this recommendation, the undersigned will address the other grounds on the merits.

his administrative remedies, see *Bryant v. Rich*, 530 F.3d 1368, 1374-76 (11th Cir. 2008).

The PLRA requires inmates to exhaust their administrative remedies prior to filing a lawsuit. Pursuant to Congress' constitutional authority, the PLRA mandates that:

> No action shall be brought with respect to prison conditions under Section 1979 of the revised statutes of the United States, 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204, 127 S. Ct. 910, 914, 166 L.Ed.2d 798 (2007). Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). Because proper exhaustion is required under the PLRA, unexhausted claims cannot be brought in federal court. *Id*. at 84-85, 126 S. Ct. at 2382-83.

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. *Id*. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, then the complaint must be dismissed. *Id*. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. *Id.* Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues … ." *Id*. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes

regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See *Bryant*, 530 F.3d at 1376-77.

According to documents submitted with defendants' motion, the Georgia Department of Corrections ("GDC") maintains a grievance procedure that is subject to explicit guidelines and available to all detainees. (Doc. 15 Exhibit A, Affidavit of Dara Oladele, ¶ 6). All detainees are advised of the grievance procedure. (Id.) Exhaustion of the GDC grievance procedure applicable to probation detention facilities requires a three-step process: Level 1 involves filing a grievance with the Grievance Coordinator, Level 2 involves continuing the grievance with the detention center's Superintendent and Level 3 involves continuing the grievance with the GDC' s Director of Facilities Operations or designee. (Id., ¶ 8). Detainees may grieve any condition, policy or action that is

directed toward or affects a detainee at the detention center, except for those areas that are specifically excluded. (Id., ¶ 7). In particular, a detainee may not grieve any matter over which the GDC or its agents have no control such as court sentences or decisions, matters of law, actions taken by another agency or governmental unit, and matters regarding a formal disciplinary action. (Id.) If a detainee wishes to file a grievance, he is required to obtain a grievance form and then to complete and return the form to the Grievance Coordinator. (Id., ¶ 9). Grievance forms may be obtained from the Officer's workstation/control station in all living units and are to be made easily available from the Grievance Coordinator or Superintendent's designee. (Id.) Once a grievance has been filed, the Grievance Coordinator has 10 days to respond to the detainee at which time the Grievance Coordinator meets with the detainee and presents her answer and/or solution to the grievance. (Id., ¶ 12). If the detainee is satisfied with the Grievance Coordinator's response, he indicates acceptance on the form and the process ends. (Id., ¶ 13).

However, if the detainee does not accept the response, he proceeds to the second step of the grievance procedure wherein he is required to indicate his dissatisfaction on the grievance form and to explain fully in writing why the answer or solution was unsatisfactory. (Id.) The detainee has two working days to decide whether to accept or appeal the Grievance Coordinator's response, and if he appeals, the grievance form is forwarded to the Superintendent. (Id.) During the second step of the grievance procedure, the Superintendent has 10 days to consider all the facts, investigate, and provide a response to the detainee's grievance. (Id., ¶ 14). If the detainee is satisfied with the Superintendent's response, he indicates acceptance on the form and the process ends. (Id., ¶ 15).

However, if the detainee does not accept the response, he proceeds to the third step of the grievance procedure wherein he is required to indicate his dissatisfaction on the grievance form and to explain fully in writing why the answer or solution was unsatisfactory. (Id.) The detainee has two working days to decide whether to accept or appeal the Superintendent's response, and if he appeals, the grievance form is forwarded to the Director of Facilities Operations or designee. (Id.) During the third and final step of the process, the Director of Facilities Operations or designee has 20 days to consider, answer and return the grievance to the Grievance Coordinator who then has 2 working days to relay the written response to the detainee. (Id., ¶ 16). Upon completion of the third step, the detainee is deemed to have exhausted the grievance procedure. (Id.)

According to the affidavit of the Grievance Coordinator submitted by defendants, a review of plaintiff's grievance records reveals that he has not exhausted any claims regarding his medical treatment at RPPDC. (Doc. 15 Exhibit A, Affidavit of Dara Oladele, ¶ 25). Plaintiff himself has utilized the grievance procedure at RPPDC on numerous occasions. (Id., ¶¶ 17-24). Specifically, plaintiff has filed at least seven grievances at RPPDC dating back to May 2008 and as recently as September 2009 covering a wide variety of complaints, including his working conditions, yard time,

4

the breakfast menu, supply call and loss of property. (Id.) However, plaintiff never filed any grievances regarding the allegations contained in his complaint. (Id., ¶ 25).

Plaintiff concedes in his complaint that he did not present the facts of his allegations in a grievance, but submits that he "provided actual constructive notice" of his claim and therefore has satisfied the exhaustion requirement. (Doc. 2). In his response to the motion to dismiss (Doc. 19), he states that because his medical condition that forms the foundation of his allegations requires immediate medical attention, he chose to expedite the process by filing this lawsuit. Plaintiff states that he has since filed grievances regarding the allegations in the complaint.

Plaintiff signed his complaint on July 27, 2009, and it was docketed as filed on August 5, 2009. Plaintiff contends that he exhausted his administrative remedies by attempting to file a handwritten "Medical Grievance" dated September 6, 2009, pursuant to Standard Operating Procedure ("SOP") VH03-0003, which he contends Grievance Coordinator Dara Oladele returned to him eight days later. (Doc. 19). Plaintiff alleges that he subsequently sent his "Medical Grievance" to the Medical College of Georgia, but has not yet received a response. (Id., pp. 2-3). For these reasons, plaintiff submits that he exhausted his administrative remedies. (Id.)

According to defendants, the procedure asserted by plaintiff in his response brief, SOP VH03-0003, allows detainees to separately address healthcare complaints or concerns to medical personnel at the facility. (Doc. 20 Affidavit of Aronna Welsh, Exhibit B, ¶ 5). However, the procedures set forth in SOP VH03-0003 do not replace or act as a substitute for the grievance procedures; rather, the process set forth in SOP VH03-0003, is intended only "as a complement to the formal grievance process." (Id. ¶ 9). Thus, the filing of a medical complaint does not equate to the filing of a grievance; rather, the purpose of the procedure for filing medical complaints and concerns is to promptly answer the detainee's medical questions or to explain a medical decision or procedure and

5

to provide detainees with factual information in an easy to understand format. (Id.).

Furthermore, even if the filing of a medical complaint could arguable satisfy the first step of the grievance procedure, such filing did not exhaust the administrative remedies in this case. First, the medical complaint referred to by plaintiff was not filed until over a month after plaintiff filed his complaint. Second, the record is clear that plaintiff was familiar with the grievance procedure and had utilized both steps one and two of the procedure previously. Here, there is no evidence of any attempt by the plaintiff to utilize any step of the grievance procedure which was in place, and no evidence that the 3 step grievance procedure was exhausted.

Plaintiff was required to exhaust his administrative remedies prior to the filing of this lawsuit. Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process before initiating suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir.2000) ( *per curiam*); see also *Miller v. Tanner,* 196 F.3d 1190, 1193 (11th Cir.1999). Plaintiff by his own admission did not file any grievance or request or any other document relative to the allegations in this lawsuit until after he filed this lawsuit. Therefore, his complaint should be dismissed for failure to exhaust administrative remedies.

It is the RECOMMENDATION of the undersigned that defendants' motion to dismiss the complaint (Doc. 15), as amended (Doc. 22), be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 13th day of July, 2010.

S//Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
msd     UNITED STATES MAGISTRATE JUDGE